José Figueroa, Plaintiff and Appellee, *v.* Juan Antonio Aponte et ux., Defendants and Appellants.

No. 5839.   Argued December 7, 1932.—Decided May 3, 1933.

*José J. Aponte* for appellants.   *M. Guzmán Texidor* for appellee.

Mr. Justice Hutchison delivered the opinion of the Court.

In an action brought against Juan Antonio Aponte a judgment by default was entered and a house and lot were attached and sold as the property of Aponte. The purchaser at the execution sale sold the house and lot to José Figueroa who then brought this revendicatory action against Aponte and his wife, Mercedes Colón. The wife died and her children were substituted as defendants.

One of the defenses set up in the answer after certain admissions and denials was that the house and lot had been the separate property of the wife, Mercedes Colón. The district judge found that the evidence for the defense failed to establish this claim. In reaching this conclusion he attached too much importance to the fact that in some of the later deeds the property was taken in the name of the husband or conveyed by him and his wife without any recital as to its separate character. He admits the separate character of other properties previously bought and sold but does not give due weight to certain significant circumstances connected with subsequent transfers.

On June 2, 1917, Mercedes Colón sold her interest in the estate of her deceased father for $700, and bought a house and lot for $400. On November 13, 1919, Aponte and his wife sold this property for $550. Two days later, Aponte

took in his own name a deed to nineteen *cuerdas* of land. The consideration was $525, receipt of which was acknowledged by the vendors. On June 5, 1926, Aponte and his wife sold this property for $1,200. On July 28, Mercedes Colón appeared before a notary and in his presence paid $800 in cash as the purchase price of the property now in controversy. The purchaser is described in the deed as a married woman, the wife of Juan Antonio Aponte. No other mention of the husband is made in the instrument.

Hortensia Colón testified that when her sister, Mercedes, married Aponte, he had nothing; that Aponte was a farm laborer who worked by the day; that Mercedes sold her share in the estate for $700 and bought a little house for $400, a part of the proceeds; that she sold this house for $550 in order to buy a parcel of land which she purchased for $525; that she paid for the 19 *cuerdas* out of the proceeds of the house; that witness knew this because she kept the money for her sister, Mercedes; that Mercedes sold this parcel of land for $1,200, of which she gave her husband $200 and out of the balance paid $800 for another house and lot, (the one now in controversy) which witness found and after certain negotiations obtained for her; that Mercedes was married at the home of witness and paid the expenses of the marriage, and that the groom had nothing.

Francisco Vázquez Colón, who had purchased from Mercedes Colón her share in her father's estate, corroborated the testimony of Hortensia Colón. His testimony covers practically the same ground. Certain details were stricken as hearsay but most of it remained intact sustained by his personal knowledge of the fact that Aponte never had any money or property and the further fact that the only working capital possessed by Mercedes was the proceeds derived from the sale of her interest in her father's estate and from the successive sales of property acquired by the investment or reinvestment of that small amount.

The testimony of Aponte was to the same effect and in addition to the facts stated by Hortensia Colón and Francisco Vázquez explained the increase in value of the house and lot first purchased by Mercedes and the price obtained for the 19 *cuerdas* which were likewise sold at a profit. It also explained the deeds relied upon by plaintiff and by the court below to show the community status of the house and lot in controversy. The notary who drew these deeds appeared as counsel for plaintiff herein and conducted the case for plaintiff at the trial. Counsel for plaintiff knew whether Aponte's statement that these deeds were drawn by the notary without any discussion as to the form thereof and without any instructions from Aponte in this regard was true or not. Yet Aponte's testimony stands uncontradicted by that of any other witness.

There is no doubt about the separate character of the $400 with which the first house and lot were purchased. Hence, this house and lot were unquestionably the separate property of the wife. Neither the fact that this house and lot were conveyed by Aponte and his wife, nor the fact that in the deed of conveyance they are said to have stated that Aponte was the owner of the property and that "they" had acquired the same by purchase etc., could convert either the house and lot or the proceeds of the sale into community property. The testimony of Mercedes Colón, of Francisco Vázquez and of Aponte to the effect that the nineteen *cuerdas* were purchased with the proceeds of this sale is reinforced by the significant fact that the purchase was made within two days after the sale. It is further fortified by the uncontroverted fact that Aponte had no money or resources of his own. He did not pay over any money in the presence of the notary. The 19 *cuerdas* were the separate property of the wife, notwithstanding the fact that Aponte appeared in the deed as the vendee, because the money with which they were purchased was the separate property of the wife. The fact that the title to this property was in the name of Aponte

would suffice to explain the subsequent conveyance thereof by Aponte and his wife as well as the recital to the effect that they were the owners of the property, even in the absence of Aponte's explanation as to the form of the conveyance. The house and lot now in controversy were the separate property of Mercedes Colón up to the time of her death and are now the property of her children because they were purchased by Mercedes Colón with the proceeds from the sale of the nineteen *cuerdas* of land which were also her separate property.

The judgment appealed from will be reversed and in lieu thereof, the judgment of this Court will be entered for defendants.